WALTER THIELE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 67506.  Promulgated February 26, 1935.

*Knowlton Durham, Esq.,* for the petitioner.
*Ralph E. Smith, Esq.,* for the respondent.

OPINION.

MORRIS: The respondent's original position in this matter appears to have been that the stocks which the petitioner sold were not those already held by him in his margin account when his orders to sell were executed in December 1929, but were those shares which he purchased on the same day that the said sales were executed. While the ultimate effect of that point of view survives, the respondent's position now seems to be, not that the petitioner sold the stock which he purchased on the same day, but that because of the clearing house regulations requiring that purchases made within the same trading period be " off-set " by sales of similar stock, thereby obviating the necessity for physical delivery of the certificates purchased or sold, thus leaving the petitioner's broker in the possession of the same shares which he already held and which he was not required to deliver because of such rules, he was in the same " long " position as he had been theretofore. The effect being, of course, to preclude him from deducting a loss measured by the cost of the shares then owned and the selling price.

The stipulation of facts refutes the original proposition advanced by the respondent. It shows clearly that all sales by the petitioner were required to be and that they in fact were executed prior to the repurchase by him of similar shares. Although the sales were admittedly made in order to claim the accrued " paper " losses for tax purposes the parties have stipulated that they were made in perfect good faith and without reservation. Nor is there any contention on the part of the respondent that such sales constituted " wash sales " under the provisions of section 118 of the Revenue Act of 1928. In fact the parties agree that the petitioner was engaged in the business of buying and selling securities, rendering that provision inapplicable.

The respondent's position, viewed from any angle whatsoever, seems wholly untenable. The facts which justify the deduction in our opinion, are that the petitioner carried a large amount of securities during 1929 upon which there had accrued large paper losses but which he had no right to take as a deduction for tax purposes. Being desirous of taking his said losses for tax purposes, he instructed his broker to sell certain of them. At or about the same time he placed orders with specialists, to be executed through his brokers, for the purchase of an equal number of the same shares sold. He instructed his brokers that the orders to purchase should not be

executed prior to the execution of his orders of sale, which we are satisfied was done. There is no contention by the respondent that the petitioner chose an erroneous basis for the computation of his aggregate loss by reason of having chosen the wrong stocks already on hand upon which to compute his loss. Indeed, the respondent admits that if the purchases and sales in question had been executed on different dates there would have been no question about the deductibility of the loss here claimed. His basis being, as we have already shown, the mechanical handling of the sales by the clearing house, i. e., because his sale order was, in effect, negatived by his purchase order, hence no change in his position.

A simple illustration, if, indeed, such be necessary, will serve to bear out that losses were sustained. Granting that the petitioner was " long " the same number of shares of the same stock at the close of the day upon which the sales and purchases were made, and granting also that because of the clearing practices it became unnecessary to " deliver " the certificates evidencing the shares purchased or shares sold, his position, from an economic or financial viewpoint, was very materially changed. For instance, assuming the stock owned on January 1, 1929, to have cost $5,000—that would be the amount he would be charged with on the books of his broker when the purchase was made. On December 5 of that year, his stock having declined in value from the original purchase price to $3,000, he instructed his broker to sell said shares, which he did, at that price. His account was, accordingly, credited with $3,000. After this transaction, if nothing else had transpired, he would have, as the respondent confesses, sustained a deductible loss of $2,000. But, at or about the same time, he instructs his broker to repurchase a like number of those shares, after the sale has been completed, at the same figure, $3,000, which he does. His brokerage account is now charged with that amount. After the completion of those transactions his account reads:

| Debit | Credit |
|---|---|
| $5,000 | |
| 3,000 | $3,000 |

which, when analyzed, shows a debit balance of $5,000, representing:

| | |
|---|---|
| Present market value of security purchased | $3,000 |
| Deficit in account occasioned by sale at less than cost | 2,000 |
| Balance of account | 5,000 |

We are of the opinion that the respondent's determination is incorrect and we so hold. See *Benjamin T. Britt*, 2 B. T. A. 530.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

TURNER dissents.